UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK KOMOROSKI, | : | CIVIL NO: 3:13-CV-00514 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| UNITED STATES OF AMERICA, | : | |
| *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiff, Mark Komoroski, pleaded guilty to conspiracy and was sentenced to prison.  Although served his prison sentence, he now brings this civil action claiming that the defendants violated his rights in connection with the criminal proceedings against him.  For the reasons discussed below, we recommend that the defendants' motions to dismiss the complaint be granted.  Because amendment would be futile, we do not recommend that Komoroski be granted leave to file an amended complaint.  Further, we recommend that the motion for sanctions filed by one of the defendants be denied.

## II.  Background and Procedural History.

Komoroski began this action by filing a complaint naming the following

entities and individuals as defendants: (1) the United States of America; (2) the

Office of the United States Attorney for the Middle District of Pennsylvania;

(3) the United States Attorney for the Middle District of Pennsylvania; (4) Christy

Fawcett, an Assistant United States Attorney for the Middle District of

Pennsylvania; (5) Attorney Frank Nocito; (6)Attorney Philip Gelso; and

(7) Attorney Carl J. Poveromo.  Komoroski's claims arise from the criminal

proceedings against him.

In August of 2009, Komoroski pleaded guilty to one count of criminal

conspiracy to export defense articles from the United States without a license or

written approval from the Department of State in violation of 18 U.S.C. § 371, and,

in July of 2010, Judge Kosik sentenced him to 32 months imprisonment, two years

of supervised release, and a $10,000 fine. *See Docs. 24 & 163* in *United States v.*

*Komoroski,* 3:08-CR-00228 (M.D.Pa.).[1]  Defendants Nocito and Gelso represented

---

[1] The Court may take judicial notice of adjudicative facts that are not subject to
reasonable dispute because they are "generally known within the trial court's
territorial jurisdiction" or because they "can be accurately and readily determined
from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid.
201(b)(2).  The docket and documents in Komoroski's criminal case are public
records of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d
685, 688 (M.D. Pa. 2008)(taking judicial notice of court docket); *S. Cross
Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426
(3d Cir. 1999)(stating that a court "may take judicial notice of another court's

Komoroski up to and during sentencing.  In November of 2010, Komoroski filed a

*pro se* 28 U.S.C. § 2255 motion, which he later amended, and in September of

2011, defendant Poveromo was appointed to represent Komoroski in connection

with his § 2255 motion. *Id.* at *Docs. 167, 182 & 224.*  Judge Kosik held a hearing

on Komoroski's § 2255 motion, and, on March 22, 2012, Judge Kosik denied the

motion. *Id.* at *Docs. 250 & 260.*  Komoroski appealed, but, on March 15, 2013, the

United States Court of Appeals for the Third Circuit dismissed his appeal as moot

given that the sentence Komoroski was challenging had expired. *Id.* at *Doc. 267.*

The Third Circuit also denied Komoroski's petition for rehearing. *See Docket in*

*United States v. Komoroski,* 12-1909 (3d Cir.).

In this case, Komoroski presents *Bivens*[2] claims and a claim under the

Federal Tort Claims Act.  Komoroski alleges that the United States knowingly

prosecuted and convicted him even though he is actually innocent.  According to

---

opinion—not for the truth of the facts recited therein, but for the existence of the
opinion, which is not subject to reasonable dispute over its authenticity").
[2] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403
U.S. 388 (1971).  In *Bivens*, the Supreme Court recognized a private cause of
action to recover damages against a federal agent for violations of constitutional
rights.  "A *Bivens* action, which is the federal equivalent of the [42 U.S.C.] § 1983
cause of action against state actors, will lie where the defendant has violated the
plaintiff's rights under color of federal law." *Brown v. Philip Morris Inc.,* 250 F.3d
789, 800 (3d Cir. 2001).  Although Komoroski refers to 42 U.S.C. §1983 as well as
*Bivens* in his complaint, since the claims in this case arise out of federal
proceedings, *Bivens*, rather than §1983, is applicable.

Komoroski, defendant Fawcett withheld exculpatory evidence and presented false evidence against him.  He alleges that his former defense attorneys provided ineffective assistance of counsel during the plea and sentencing phases and in connection with his § 2255 motion.  Komoroski claims that as a result of the defendants' actions he was wrongfully imprisoned for an extra two years.  More specifically, he alleges that he pleaded guilty to a violation of the generic federal criminal conspiracy statute, and he should have been sentenced to a maximum of one year of imprisonment.  But, according to Komoroski, the prosecution knowingly presented false evidence that he was guilty of exporting arms, munitions, or military equipment or services without the required licenses, and, therefore, instead of being punished under Sentencing Guideline §2B1.1, he was punished under the more onerous Sentencing Guideline §2M5.2.  He alleges that, as a result, he received an extra two years of imprisonment.  According to Komoroski, he had the required licenses, and defendants Gelso and Nocito were ineffective at sentencing by failing to present evidence of his actual innocence of exporting weapons without the required licenses.  Further, Komoroski alleges that defendant Poveromo was ineffective with regard to his § 2255 motion by defaulting his actual innocence claim.

The defendants filed motions (docs. 7, 8, 17, & 19) to dismiss the complaint. In addition, defendant Poveromo filed a motion (doc. 34) for sanctions. We address those motions in this Report and Recommendation.

## III. Motions to Dismiss.

The defendants move to dismiss all of the claims in the complaint. We begin our analysis with the Federal Tort Claims Act (FTCA) claim.

### A. Federal Tort Claims Act Claim.

#### 1. The United States is the Only Proper Defendant as to the Federal Tort Claims Act Claim.

"The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Sosa v. Alvarez-Machain,* 542 U.S. 692, 700 (2004)(quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)). Federal district courts have jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the

5

place where the act or omission occurred." 28 U.S.C. § 1346(b).  The only proper

defendant with respect to an FTCA claim is the United States. *See* 28 U.S.C.

§ 2679; *Kennedy v. United States Postal Service*, 145 F.3d 1077, 1078 (9th Cir.

1998)("the United States is the only proper party defendant in an FTCA action").

Due to the exclusive nature of the remedy available under the FTCA, and its

jurisdictional prerequisites, a court may not entertain a civil suit for a claim

cognizable under 28 U.S.C. § 1346(b) against "any employee of the Government

while acting within the scope of his office or employment." 28 U.S.C.

§ 2679(b)(1).  Moreover, constitutional tort claims cannot be brought under 28

U.S.C. § 1346(b). *FDIC v. Meyer,* 510 U.S. 471, 477-78 (1994).

The United States is the only proper defendant with respect to Komoroski's

FTCA claim.  Thus, to the extent that Komoroski is attempting to bring FTCA

claims against any of the other defendants, those claims should be dismissed.


### 2.  This Court lacks Subject-Matter Jurisdiction over the Federal Tort Claims Act Claim.

The United States moves to dismiss the FTCA claim based on lack of

subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).  Challenges to

subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1) may be "facial" or

"factual." *Turicentro, S.A. v. American Airlines, Inc.,* 303 F.3d 293, 300 n.4 (3d

Cir. 2002).  A facial attack contests the sufficiency of the pleadings. *Id.*  In

reviewing a facial attack, the court considers, in the light most favorable to the plaintiff, the allegations in the complaint and any documents referenced and attached to the complaint. *Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000).  In contrast to a facial attack, "in a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Id.* at 178.  "The plaintiff has the burden of persuasion to convince the court it has jurisdiction." *Id.*  Here, the United States makes a factual attack under Fed.R.Civ.P. 12(b)(1).  The United States contends that the Court lacks subject-matter jurisdiction because Komoroski failed to exhaust administrative remedies.

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993).  28 U.S.C.A. § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

An administrative tort claim must be presented to the appropriate federal agency within two years after the claim accrues, and an action in court must be filed within six months of the date of mailing of the final denial of the claim by the agency. 28 U.S.C. §2401(b).  In accordance with regulations from the Department of Justice, "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a).

"The FTCA precludes suit against the United States unless the claimant has first presented the claim to the relevant Federal agency and the claim has been finally denied." *Lightfoot v. United States*, 564 F.3d 625, 626 (3d Cir. 2009).  In this case, Komoroski does not contest that he did not present his claim to the appropriate federal agency—the Department of Justice.  Rather, he contends that he is excused from the exhaustion requirement because it would futile to present a claim to the agency that employs the prosecutor that purportedly injured him. Komoroski's futility argument is without merit as the requirement that a claim be presented to the agency and finally denied is "jurisdictional and cannot be waived." *Bialowas v. United States,* 443 F.2d 1047, 1049 (3d Cir. 1971).  Because

Komoroski did not exhaust administrative remedies before instituting this action, this Court lacks subject-matter jurisdiction over the FTCA claim.[3]

Komoroski requests leave to amend his complaint to add allegations that federal investigatory agents fabricated evidence and withheld exculpatory evidence. But because Komoroski has not exhausted administrative remedies, it would be futile to grant Komoroski leave to amend as to the FTCA claim.

**B.** *Bivens* **Claims.**

The defendants move to dismiss Komoroski's constitutional claims, which are appropriately considered *Bivens* claims.

**1. Motion to Dismiss and Pleading Standards.**

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In

---

[3] The United States argues, in the alternative, that even if Komoroski had exhausted administrative remedies, his FTCA claim would be barred by 28 U.S.C. § 2680(h). Because Komoroski has not exhausted administrative remedies, we do not address that argument.

making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler,* 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed

right to relief beyond the level of mere speculation, set forth in a "short and plain"

statement of a cause of action.

### 2.  Komoroski Cannot Bring a *Bivens* Claim Against the Office of the United States Attorney, and his Claims Against the Prosecution Defendants in Their Official Capacities are Barred by Sovereign Immunity.

Komoroski names the Office of the United States Attorney for the Middle

District of Pennsylvania as a defendant.  A *Bivens* action, however, can be brought

only against individual officials and not against a federal agency. *FDIC v. Meyer*,

510 U.S. 471, 486 (1994).  Thus, the complaint fails to state a claim upon which

relief can be granted against the Office of the United States Attorney for the

Middle District of Pennsylvania.

Komoroski also seeks to hold the individual prosecution defendants, *i.e.*

defendants Fawcett and the United States Attorney for the Middle District of

Pennsylvania, liable in both their personal and official capacities.  The prosecution

defendants argue that sovereign immunity bars the claims against them in their

official capacities.

"It is axiomatic that the United States may not be sued without its consent

and that the existence of consent is a prerequisite for jurisdiction." *U.S. v. Mitchell,*

463 U.S. 206, 212 (1983).  "Absent a waiver, sovereign immunity shields the

Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 475.

"Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55 (1978))**.** Thus, claims against the defendants in their official capacities are really claims against the United States and are barred absent a waiver of sovereign immunity.

In contrast to FTCA actions, which must be brought against the United States, *Bivens* constitutional tort claims can only be lodged against individual government officials.  Indeed, it is well-settled that *Bivens* actions against the United States—and, by extension, against federal agencies or officials sued in their official capacity—are barred by sovereign immunity absent an explicit waiver of that immunity. *Meyer,* 510 U.S. at 483; *Huberty v. United States Ambassador to Costa Rica*, 316 F. App'x 120, 122 (3d Cir. 2008); *Jaffee v. United States,* 592 F.2d 712, 717 (3d Cir. 1979); *Bell v. Rossott,* 227 F.Supp.2d 315, 320 (M.D. Pa. 2002)(dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States).

Applying these legal principles here, Komoroski cannot bring constitutional claims against the individual prosection defendants in their official capacities since such claims are barred by the doctrine of sovereign immunity.

### 3.   Komoroski's *Bivens* Claims Are Barred by the Favorable-Termination Rule of *Heck v. Humphrey,* 512 U.S. 477 (1994).

Komoroski claims that the prosecution defendants violated his rights by withholding exculpatory evidence and by presenting false evidence against him. And he claims that his former attorneys violated his rights by providing ineffective assistance of counsel.   Komoroski's claims, however, are barred by the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).

The plaintiff in *Heck* filed a 42 U.S.C. § 1983 action against two county prosecutors and an Indiana State Police investigator challenging his manslaughter conviction. 512 U.S. at 478-79.  He alleged that the defendants engaged in an unlawful, unreasonable, and arbitrary investigation which led to his arrest; that the defendants knowingly destroyed exculpatory evidence; and that the defendants caused an illegal voice identification procedure to be used at trial. *Id.* at 479.  In affirming the lower court's dismissal of the action, the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87, 490

15

(footnote omitted).  "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

The rationale of the Court in *Heck* was based, in part, on a desire to avoid parallel litigation over the issues of probable cause and guilt, to prevent the creation of two conflicting resolutions arising out of the same transaction, and to preclude a convicted criminal defendant from collaterally attacking a conviction through a civil suit. *Royal v. Durison,* 254 F. App'x 163, 165 (3d Cir. 2007).  Even if the plaintiff has exhausted available state remedies, he has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. *Heck,* 512 U.S. at 489.  "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005).  Although *Heck* involved a 42 U.S.C. § 1983 action by a state prisoner, its reasoning also applies to claims under *Bivens. Lora–Pena v. F.B.I.,*

16

529 F.3d 503, 506 n. 2 (3d Cir.2008) (per curiam); *Murphy v. Bloom*, 443 F. App'x 668, 669 n.2 (3d Cir. 2011).

In this case, Komoroski alleges that the prosecution defendants withheld exculpatory evidence and presented false testimony.  Success on these claims would necessarily demonstrate the invalidity of his conviction. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1300 (2011)(citing *Heck* and stating that because a claim, under *Brady v. Maryland,* 373 U.S. 83 (1963), that exculpatory evidence was withheld, "when successful postconviction, necessarily yields evidence undermining a conviction[,] . . . *Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983."); *Dukes v. Pappas*, 405 F. App'x 666, 668-69 (3d Cir. 2010)(holding that *Brady* claim barred by the rule of *Heck*); *Smith v. Holtz,* 87 F.3d 108, (3d Cir. 1996)(concluding that claims that defendants suppressed exculpatory evidence and contrived inculpatory evidence did not accrue under *Heck* until the Pennsylvania Supreme Court ordered the charges dismissed), *abrogated in part on other grounds by Wallace v. Kato,* 549 U.S. 384, 393 (2007)(holding that *Heck* applies only when an action would impugn an outstanding criminal conviction not merely when an action would impugn an anticipated future conviction).  Komoroski also claims that his former attorneys provided ineffective assistance of counsel during his criminal proceedings. Success on those claims would also necessarily demonstrate the invalidity of his

conviction or sentence. *See Smith v. Gambrell,* 108 F.App'x. 218, 218-19 (5th Cir. 2004)(concluding that allegations of ineffective assistance of trial counsel call into question the validity of the plaintiff's conviction, and, therefore, the plaintiff must satisfy the conditions of *Heck* before he can proceed in a civil rights action).

Because success on Komoroski's *Bivens* claims would necessarily demonstrate the invalidity of his conviction or sentence, such claims are not cognizable unless or until Komoroski's conviction or sentence has been set aside. Komoroski's conviction and sentence have not been set aside. Accordingly, the *Bivens* claims are barred by the favorable-termination rule of *Heck*.

Komoroski responds that his claims are not barred by *Heck* because he is actually innocent. But he has not presented any cases holding that actual innocence is an exception to the *Heck* bar, and the Court is not aware of any such cases. And for good reason: allowing an actual-innocence exception to *Heck* would defeat the very rationale of the *Heck* rule, which is a desire to avoid parallel litigation over the issue of guilt, to prevent the creation of two conflicting resolutions of that issue, and to preclude a convicted criminal defendant from collaterally attacking a conviction through a civil suit.

Komoroski also suggests that, since his appeal to the Third Circuit was dismissed as moot because he is no longer serving the sentence at issue, he should be allowed to proceed in this civil action. Although several Courts of Appeals

18

have concluded that *Heck*'s favorable-termination requirement does not apply to a plaintiff no longer in custody, the Third Circuit has expressly declined to adopt that rule. *Royal v. Durison*, 254 Fed.Appx. 163, 166 (3d Cir. 2007)(citing *Williams v. Consovoy,* 453 F.3d 173, 177-78 (3d Cir. 2006)).  And so the fact that Komoroski is no longer incarcerated and can no longer challenge his sentence by way of a § 2255 motion does not  mean that he can proceed in this civil action to challenge a conviction and sentence that have not been overturned or called into question.

### 4.  Defendants Fawcett and the United States Attorney Are Also Protected by Absolute Immunity from Damages.

In addition to Komoroski's claims being barred by the favorable-termination rule of *Heck,* defendants the United States Attorney and Fawcett are entitled to absolute prosecutorial immunity from Komoroski's claims for damages.

"Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris v. Delaware,* 465 F.3d 129, 134-35 (3d Cir. 2006)(quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)).  There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id.* at 135.  Although most public officials are entitled only to qualified immunity, public officials who

perform 'special functions' are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou,* 438 U.S. 478, 508 (1978)). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006). "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz,* 438 U.S. at 512).

A functional approach is used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). "The functions of the prosecutor encompass activities protected by both absolute and qualified immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992). The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone,* 538 F.3d 202, 208 (3d Cir. 2008). Absolute immunity, however, does not apply to administrative or investigative actions unrelated to initiating or conducting judicial proceedings. *Id.* Prosecutors are shielded by absolute immunity for actions which are intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Such activities include activities undertaken while in court as well as selected out-of-court behavior intimately associated with

the judicial phases of litigation. *Kulwicki,* 969 F.2d at 1463.  The decision to

initiate a prosecution is at the core of a prosecutor's judicial role, and a prosecutor

is absolutely immune when making such a decision even if he or she acts without a

good faith belief that any wrongdoing has occurred. *Id.* at 1463-64.  A prosecutor

is also entitled to absolute immunity for the preparation and filing of charging

documents and arrest warrants. *Kalina,* 522 U.S. at 129.  Further, "[t]he 'deliberate

withholding of exculpatory information' is included within the 'legitimate exercise

of prosecutorial discretion.'" *Yarris,* 465 F.3d at 137 (quoting *Imbler,* 424 U.S. at

431–32 n. 34)).  Thus, '[i]t is well settled that prosecutors are entitled to absolute

immunity from claims based on their failure to disclose exculpatory evidence, so

long as they did so while functioning in their prosecutorial capacity." *Id.*

　　In this case, Komoroski complains about defendant Fawcett's activities

related to his prosecution and sentencing.[4]  Because defendant Fawcett was acting

in her prosecutorial capacity with respect to the actions complained of, she is

entitled to absolute immunity from Komoroski's claims for damages.  And the

United States Attorney for the Middle District of Pennsylvania cannot be liable on

the basis of *respondeat superior* for the activities of Fawcett. *Ashcroft v. Iqbal,* 556

---

[4] In his brief, Komoroski attempts to cast his allegations against Fawcett as
allegation that Fawcett was acting in an investigatory, rather than a prosecutorial
capacity.  But the complaint cannot reasonably be read as such.  Instead, the
complaint complains about the actions of Fawcett in presenting certain evidence
against him and in withholding other evidence at the sentencing and post-
conviction phases of the case.  Those are prosecutorial, not investigative, activities.

U.S. 662, 676 (2009).  Moreover, although a prosecutor's training of subordinates and supervision of subordinates are prosecutorial functions that are administrative in nature, the training of attorneys to exercise their prosecutorial duties is a function that is directly connected to a prosecutor's trial advocacy duties and, therefore, prosecutorial immunity extends to the training and supervision of subordinates as to the subordinates' performance of prosecutorial acts. *Van de Kamp v. Goldstein,* 555 U.S. 335, 344 (2009).  Thus, the United States Attorney for the Middle District of Pennsylvania cannot be liable on the basis of a purported failure to train Fawcett regarding her prosecutorial duties.[5]

### 5.  Additionally, Komoroski Fails to State a *Bivens* Claim Upon Which Relief Can Be Granted Against His Former Defense Attorneys Because they Were Not Acting Under Color of Federal Law.

In *Polk County v. Dodson*, 454 U.S. 312, 325 (1981), the United States Supreme Court held that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.  The rationale of *Polk* applies to defense counsel in federal

---

[5] Because Komoroski's *Bivens* claims against the prosecution defendants are clearly barred by *Heck* and prosecutorial immunity, we do not address the prosecution defendants other arguments for dismissal—the statute of limitations and qualified immunity.

criminal proceedings.  *Murphy v. Bloom*, 443 F. App'x 668, 670 (3d Cir. 2011)(applying *Polk* to defense counsel in a federal criminal case).

"Public defenders may be liable, however, for intentional misconduct if they conspire with state officials to deprive their clients of constitutional rights." *Stankowski v. Farley,* 251 F. App'x 743, 747 (3d Cir. 2007).  Komoroski asserts in his briefs in opposition that his former counsel and the prosecutor conspired to violate his rights.  His complaint, however, does not contain facts leading to a reasonable inference that his former defense attorneys and the prosecution conspired.  Therefore, Komoroski has no *Bivens* cause of action against defendants Gelso, Nocito, and Poveromo as they are not federal actors and did not act under color of federal law for purposes of *Bivens* when representing Komoroski in the criminal proceedings.[6]

---

[6]  Defendant Poveromo also asserts that he is entitled to absolute immunity.  In *Black v. Bayer,* 672 F.2d 309, 320 (3d Cir. 1982), the Third Circuit held that "public defenders and court-appointed counsel acting within the scope of their professional duties are absolutely immune from civil liability under § 1983."  A couple of years later, however, the United States Supreme Court refused to extend such immunity to public defenders. *Tower v. Glover,* 467 U.S. 914, 923 (1984)(concluding that "state public defenders are not immune from liability under § 1983 for intentional misconduct, "under color of" state law, by virtue of alleged conspiratorial action with state officials that deprives their clients of federal rights").

### 6.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*  In this case, amendment would be futile because Komoroski's *Bivens* claims are barred by the favorable-termination rule of *Heck.* Thus, we will recommend that the court dismiss the complaint without granting Komoroski leave to amend.

### C.  Malpractice Claims.

Having determined that complaint fails to state any federal claims upon which relief can be granted, the remaining claims are Komoroski's state law malpractice claims against his former defense counsel over which this court has supplemental jurisdiction.

Whether to exercise supplemental jurisdiction is within the discretion of the court.  28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction.  When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in

24

each case, and at every stage of the litigation, the values of judicial economy,

convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522

U.S. 156, 173 (1997)(quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350

(1988)).  The Third Circuit has held that "where the claim over which the district

court has original jurisdiction is dismissed before trial, the district court must

decline to decide the pendent state claims unless considerations of judicial

economy, convenience, and fairness to the parties provide an affirmative

justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir.

2000)(quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.

1995)).

There is nothing unique about this case such that considerations of judicial

economy, convenience, and fairness provide an affirmative justification for

exercising supplemental jurisdiction after the court disposes of the federal claims.

Accordingly, we recommend that the court decline to exercise supplemental

jurisdiction over the state law malpractice claims.

## IV.  Motion for Sanctions.

The only remaining matter is defendant Poveromo's  motion for Rule 11

sanctions.  Poveromo contends that Komoroski's claims against him are frivolous

because, as a court-appointed counsel, he did not act under color of state law and

25

he is entitled to absolute immunity.  Poveromo asserts that he served Komoroski

with his motion for sanctions more than twenty-one before filing the motion, and

instead of withdrawing the claims against Poveromo, Komoroski filed a brief in

opposition to Poveromo's motion to dismiss asserting that Poveromo is liable

because he conspired with the prosecution.  Poveromo argues, and as discussed

above, we have concluded that the complaint does not adequately plead a

conspiracy between Poveromo and the prosecution.  Poveromo contends that

sanctions are warranted and that appropriate sanctions are the attorneys' fees he

incurred in defending the case.

Federal Rule of Civil Procedure 11(b) provides:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—-an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

The Court may impose an appropriate sanction for a violation of Rule 11(b).

Fed.R.Civ.P. 11(c).  "A motion for sanctions must be made separately from any

other motion and must describe the specific conduct that allegedly violates Rule

11(b)." Fed.R Civ.P. 11(c)(2).  The Rule describes the nature of an appropriate

sanction:

> A sanction imposed under this rule must be limited to what
> suffices to deter repetition of the conduct or comparable
> conduct by others similarly situated. The sanction may include
> nonmonetary directives; an order to pay a penalty into court; or,
> if imposed on motion and warranted for effective deterrence, an
> order directing payment to the movant of part or all of the
> reasonable attorney's fees and other expenses directly resulting
> from the violation.

Fed. R. Civ. P. 11(c)(4).

Rule 11 imposes on any party who signs a pleading, motion, or other paper

"an affirmative duty to conduct a reasonable inquiry into the facts and the law

before filing, and ... the applicable standard is one of reasonableness under the

circumstances." *Business Guides, Inc. v. Chromatic Communications Enterprises,*

*Inc .,* 498 U.S 533, 551 (1991).  The standard is "an objective standard of

reasonableness under the circumstances." *Mary Ann Pensiero, Inc. v. Lingle*, 847

F.2d 90, 94 (3d Cir. 1988).  As such, subjective good faith is not sufficient to avoid

sanctions, and 'the Rule does not recognize a 'pure heart and empty head'

defense." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)(quoting

Schwarzer, *Sanctions Under The New Rule 11-A Closer Look,* 104 F.R.D. 181, 187

(1985)).  Nevertheless, Rule 11 sanctions are intended only for exceptional

circumstances, and sanctions should not be imposed merely because a party fails to

prevail. *Id.* at 483.

The main purpose of Rule 11 is deterrence, not compensation. *DiPaolo v.

Moran,* 407 F.3d 140, 145 (3d Cir. 2005).  "[T]he guiding purpose in fixing Rule

11 sanctions is fashioning a sanction adequate to deter undesirable future conduct."

*Id.*  A *pro se* complaint is held to less stringent standards than a complaint drafted

by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But *pro se* parties are not

excused from the requirements of Rule 11.  Nevertheless, a court may take a

party's *pro se* status into account when considering Rule 11 sanctions.

*Vukadinovich v. McCarthy,* 901 F.2d 1439, 1445 (7th Cir. 1990).

"Although monetary sanctions are not encouraged under Rule 11, they are

not forbidden." *DiPaulo,* 407 F.3d at 145.  In fashioning an appropriate sanction,

the court should consider mitigating factors, including whether the party has a

history of sanctionable behavior, the need for compensation of the party seeking

sanctions, the degree of frivolousness, and the willfulness of the violation. *Zuk v.

Eastern PA Psychiatric Institute of the Medical College of PA,* 103 F.3d 294, 301

(3d Cir. 1996).  In addition, in considering whether to impose monetary sanctions, the court should consider the party's ability to pay. *Id.*

In this case, we recommend that sanctions not be imposed.  While we conclude that Komoroski failed to sufficiently allege facts supporting a conspiracy between Poveromo and the prosecution, a claim based on a conspiracy between defense counsel and the prosecution is not frivolous. *See Tower v. Glover,* 467 U.S. 914, 923 (1984) (concluding that "state public defenders are not immune from liability under § 1983 for intentional misconduct, "under color of" state law, by virtue of alleged conspiratorial action with state officials that deprives their clients of federal rights").  The mere fact that the complaint should be dismissed does not warrant a finding of a violation of Fed.R.Civ.P. 11(b).  Since Komoroski fails to allege facts sufficient to support a conspiracy, normally the Court would grant him leave to amend to attempt to plead such facts.  In this case, we recommend that Komoroski not be granted leave to amend because his claims in any event are barred by *Heck.*  But, while other of the defendants raised the *Heck* bar, Poveromo did not argue that *Heck* bars the claims against him.  Rather, his motion to dismiss and motion for sanctions argued that the complaint fails to state a claim upon which can be granted because he did not act under color of federal law and he is entitled to absolute immunity.  Since Poveromo did not raise *Heck* in his motion for sanctions and absent *Heck* we would recommend that Komoroski be granted

29

leave to amend, we recommend that sanctions not be imposed.  Moreover,

although Poveromo asks the Court to impose sanctions in the form of the

attorney's fees that he incurred in defending this action, he has not set forth, or

provided any evidence of, the amount of those fees.  For these reasons, we will

recommend that the motion for sanctions be denied.


## V.  Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the

defendants' motions (docs. 7, 8, 17, & 19) to dismiss be granted and that defendant

Poveromo's motion (doc. 34) for sanctions be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within
> fourteen (14) days after being served with a copy thereof.  Such party
> shall file with the clerk of court, and serve on the magistrate judge and
> all parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to
> which objection is made and the basis for such objections.  The
> briefing requirements set forth in Local Rule 72.2 shall apply.  A
> judge shall make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to which
> objection is made and may accept, reject, or modify, in whole or in
> part, the findings or recommendations made by the magistrate judge.
> The judge, however, need conduct a new hearing only in his or her
> discretion or where required by law, and may consider the record

developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of January, 2014.


                                        **_S/Susan E. Schwab_**
                                        Susan E. Schwab
                                        United States Magistrate Judge